| UNIVERSITY OF NEW ORLEANS RESEARCH AND TECHNOLOGY FOUNDATION, INC. | * | NO. 2024-CA-0472 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| VERSUS | | FOURTH CIRCUIT |
| | * | |
| NORMAN WHITE CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE, CITY OF NEW ORLEANS; ERROLL G. WILLIAMS, ASSESSOR, ORLEANS PARISH; AND LAWRENCE E. CHEHARDY, CHAIRMAN, LOUISIANA TAX COMMISSION | * * * * * * * | STATE OF LOUISIANA |

CONSOLIDATED WITH:

UNIVERSITY OF NEW ORLEANS RESEARCH AND TECHNOLOGY FOUNDATION, INC.

VERSUS

NORMAN WHITE CHIEF FINANCIAL OFFICER AND DIRECTOR OF FINANCE, CITY OF NEW ORLEANS; ERROLL G. WILLIAMS, ASSESSOR, ORLEANS PARISH; AND LAWRENCE E. CHEHARDY, CHAIRMAN, LOUISIANA TAX COMMISSION

CONSOLIDATED WITH:

NO. 2024-CA-0473

APPEAL FROM
BOARD OF TAX APPEALS
NO. L01362 C/W L01634
Judge Cade R. Cole
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Karen K. Herman)

**ATKINS, J., DISSENTS AND ASSIGNS REASONS.**

Cheryl Mollere Kornick
Robert S. Angelico
Tyler D. Trew
LISKOW & LEWIS
701 Poydras Street, Suite 5000
New Orleans, LA 70139

      COUNSEL FOR PLAINTIFF/APPELLEE

John J. Weiler
Reese F. Williamson
WEILER & REES, L.L.C.
909 Poydras Street, Suite 1250
New Orleans, LA 70112

      COUNSEL FOR DEFENTANT/APPELLANT, ERROLL G. WILLIAMS, ASSESSOR, PARISH OF ORLEANS

James M. Roquemore
DEPUTY CITY ATTORNEY
Corwin M. St. Raymond
CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
1300 Perdido Street, Suite 5E03
New Orleans, LA 70112


      COUNSEL FOR DEFENDANT/APPELLANT, NORMAN WHITE IN HIS CAPACITY AS DIRECTOR OF THE DEPARTMENT OF FINANCE, AND CITY OF NEW ORLEANS

      AFFIRMED

# **MARCH 6, 2025**

*DLD*
*KKH*

In this tax exemption case, the defendants, Erroll G. Williams, in his capacity as Assessor for Orleans Parish ("the Assessor"), and Norman White, in his capacity as Director of the Department of Finance for the City of New Orleans ("the City"), appeal a judgment of the Louisiana Board of Tax Appeals rendered in favor of the plaintiff, University of New Orleans Research and Technology Foundation, Inc. ("UNORTF"). For the reasons that follow, we affirm the judgment of the Board of Tax Appeals.

**FACTS AND PROCEDURAL HISTORY**

The property issue in this case consist of four buildings located in a research and technology park owned by UNORTF. The land on which the buildings are situated was acquired by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College acting on behalf of the University of New Orleans ("UNO") and was conditioned upon the construction of the research and technology park. Construction of the buildings was financed pursuant to cooperative endeavor agreements between UNORTF, the State of Louisiana, the

1

Louisiana Department of Economic Development and UNO. UNORTF issued bonds through the Louisiana Public Facilities Authority and the legislature appropriated general funds annually to retire the bonded indebtedness.

UNORTF was formed in 1997 as a Section 501(c)(3) nonprofit corporation. According to UNORTF's articles of incorporation, its purposes were to support programs, facilities and educational and research opportunities offered by UNO; to promote, expand and improve the university's curricula and programs; to provide greater educational opportunities; and to encourage teaching, research, and scholarship. UNORTF's mission also includes attracting new industry to the community, encouraging the development of or retention of an industry in the community; promoting the development of high technology industries and research; increasing employment opportunities; promoting cooperation between the public and private sector with respect to research and development; and to create, develop, construct, manage and finance one or more research and technology parks. The legislature outlines the public purpose served by research and technology parks that support public universities in La. R.S. 17:3389(a). The City of New Orleans Code of Ordinances, Chapter 150, Article VI, Division 3, Section 150-538 recognizes that a research and technology park authorized by the legislature serves a public purpose.

On January 23, 1998, UNO leased the land on which the buildings are situated to UNORTF to construct and develop the research and technology park. According to the ground lease, UNORTF must: (1) establish, operate and manage

the research and technology park; (2) identify and recruit potential tenants; (3) screen potential tenants for appropriateness in light of the research and technology park mission, the cash sale, lessor's guidelines for tenancy and the covenants, conditions, and restrictions; and (4) recommend appropriate tenants to UNO for approval. Upon termination of the lease for any reason, or upon dissolution of UNORTF, title to the buildings automatically transfers to UNO.

UNORTF filed a petition with the Louisiana Board of Tax Appeals seeking an exemption from 2022 Orleans Parish *ad valorem* taxes (paid under protest) for four buildings (2219 Lakeshore Drive, 2285 Lakeshore Drive, 2253 Lakeshore Drive, and 2021 Lakeshore Drive) located in the UNO Research and Technology Park. UNORTF filed a second petition seeking an exemption from the 2023 *ad valorem* taxes for the same properties. The two cases were consolidated. UNORTF argued two alternative theories as the basis for the exemption; it contended that the subject property qualified for an exemption for the property being used for public purposes under La. Const. Art. VII, § 21(A) or an exemption for property owned and operated for charitable purposes under La. Const. Art. VII § 21(B)(1)(a)(i).

A trial on the merits took place on January 31, 2024. Following trial on the merits, the Board of Tax Appeals issued its original order and reasons on April 11, 2024, its supplemental order and reasons on April 24, 2024, and its judgment on the merits on June 14, 2024, finding the subject property to be exempt from

Orleans Parish *ad valorem* taxes under La. Const. Art. VII, § 21(A) for tax years 2022 and 2023. It is from this judgment that the Assessor and the City now appeal.

**DISCUSSION**

On appeal, the Assessor and the City raise the following assignments of error: (1) the Board of Tax Appeals erred its interpretation and application of the constitutional test under La. Const. Art. VII, § 21(A), because it failed to correctly interpret and apply the two-part legal test to determine whether property owned by a private taxpayer is exempt from *ad valorem* taxation under Section 21(A); (2) the Board of Tax Appeals erred in its application of the legal standards and burden of proof on UNOTRF in this case, which is the strict construction legal standard and heightened burden of proof applicable to all tax exemption cases; (3) the Board of Tax Appeals was manifestly erroneous in its conclusions that the tenants' activities at the subject properties supported a public purpose because there is insufficient evidence in the record to prove that the activities at subject properties were conducted for a public purpose during the relevant time period; and (4) the Board of Tax Appeals erred by overruling several of Assessor Williams' objections to the inadmissible hearsay testimony of UNORTF's CEO as to the activities and statements of the third-party tenants of the subject properties.

La. Const. Art. VII, § 21(A) exempts from *ad valorem* or property taxes any property that serves a public purpose, where the property and its revenues are dedicate to that public purpose. *Adm'rs of Tulane Educ. Fund v. Bd. of Assessors*, 38 La.Ann. 292 (1886). To qualify, the property need not have any public

ownership. If privately-owned property and the revenue from the property are dedicated to a legislatively recognized public purpose and public use, the property is exempt. *Id.*; *Warren County, Mississippi v. Hester*, 219 La. 763, 54 So.2d 12, 14 (1951). Property "consecrated to public use is not taxable irrespective of the nature of the ownership." *Holly v. Plum Creek Timber Co.*, 38,716, p. 8 (La. App. 2 Cir. 6/23/04), 877 So.2d 284, 290 (citing *Warren County, Mississippi*, 219 La. 763, 54 So.2d at 14*)*.

The Supreme Court has made it clear that it is the legislature that defines the "public use" underlying the §21(A) exemption:

> And these illustrate another proposition, viz; that private property which is subject to taxation becomes exempt by the change that is made in its use. The character of taxability is not ineffaceably stamped on property, and it may be removed by the act of its owner. Whenever he dedicates it to public use it passes under the dominion of the exemption that is accorded to public property. And that is what we meant when in the earlier part of this opinion we said that the question was whether the consecration of the plaintiffs' revenues to a public use did not *proprio vigore* operate an exemption. The legislature cannot exempt from taxation property that is constitutionally liable to it, but an owner of property may translate it into the domain of constitutional exemption by dedicating it to public use.

*Tulane*, 38 La. Ann. at 297-298.

Accordingly, "the legislature determines what is a public use, and when it has declared what may be so regarded, courts will not interfere except in clear cases of usurpation or abuse of authority." *Id.* This Court reaffirmed this standard in *Board of Commissioners of the Port of New Orleans v. City of New Orleans*, 15-0768 (La. App. 4 Cir. 3/16/16), 186 So.3d 1282.

The legislature broadly defined the public purpose and public use of the research and technology parks as follows:

> The legislature finds that development of research and development parks in association with public or regionally accredited independent universities in the state, with quality facilities for research and development, manufacturing of goods resulting from and related to research and development facilities, and related support services and concerns, will benefit the citizens of Louisiana through improved scientific information and technology and through improved scientific information and technology and through improved economic conditions and creation of jobs.

La. R.S. 17:3389(a).

A research and technology park under this legislation is an area near a public university that can be leased to business and industry engaged in research, technology, developing products, and related support services and concerns. The expectation is that the park will create economic activity for the area, and that the business and industry located there can collaborate with the nearby university.

As the Board of Tax Appeals recognized in the instant case, "the legislature provided non-profit corporations, like UNORTF, with special powers" necessary to accomplish that public purpose. As long as UNORTF uses these powers to accomplish the public purpose, it is engaged in a "public use" for purposes of §21(A). The legislature gave UNORTF and UNO the discretion to select tenants that UNO believed support the public purpose underlying the research and technology park. The legislature also gave UNORTF and UNO the discretion to forge connections between tenants and UNO in a way that best accomplished the public purpose of the research and technology park. Accordingly, we find no merit regarding the first assignment of error raised by the Assessor and the City.

In their second assignment of error, the Assessor and the City argue that the Board of Tax Appeals erred in its application of the legal standards and burden of

6

proof on UNORTF in this case. The Assessor and the City argue that each of the research and technology park's tenant's activities must constitute some "public purpose," which is never defined. However, the legislature did define the applicable public purpose in La. R.S. 17:3389(a) and La. R.S. 17:3397.5. The Board of Tax Appeals recognized that these statutes laid down the proper governing standard. The legislation recognized that UNORTF, not the tenants, is using the subject property for that purpose; the legislation delegates to UNORTF, not the tenants, the authority to take the actions necessary to meet that public purpose. *See* La. R.S. 17:3397.5. Accordingly, it is the activities of UNORTF, not the tenants, that must be examined to determine if UNORTF complied with the legislature's directives.

In its order and reasons, the Board of Tax Appeals found: "Absent some indication that the Foundation has deviated from the legislature's directives, it is not appropriate for the Assessor or this Board to essentially devise its own criteria for screening and monitoring tenants. The legislature has delegated that function to UNO and the Foundation." In *Board of Commissioners of the Port of New Orleans v. City of New Orleans*, we have a situation where the legislature had also defined the public purpose for the Port and the Port, the party charged with meeting the public purpose, provided testimony as to why it chose specific tenants to meet that public purpose, and how those tenants helped the Port meet the public purpose. 15-0768 at pp. 8-9, 186 So.3d at 1287. This Court held "that the lessees' activities on the Port's property further its public mission and satisfy the public purpose requirement of La. Const. art. VII, § 21(A)." *Id.* at p. 9, 186 So.3d at 1287. The Court further found "the activities of the lessees are in harmony with the Port's legislative mission and provide a public benefit as outlined above." *Id.*

7

at p. 10, 186 So.3d at 1288. Accordingly, the ultimate standard was whether the tenants' activities were "in harmony" with the directives given by the legislature to the Port. There was no holding that the activities of the tenants, independently, needed to meet some unstated public purpose.

In the instant case, the Board of Tax Appeals heard testimony from Ms. Conwell, the CEO and president of UNORTF, as to (1) how UNORTF and UNO screened tenants to assure the tenants would be "in harmony" with UNORTF's legislative mission; and (2) how UNORTF monitored the activities of the tenants to bring about as much collaboration with UNO as possible. This testimony was uncontradicted. As the trier of fact, the Board of Tax Appeals is entitled to deference, and the Court cannot overturn a finding by the trier of fact unless there is no support in the record, especially where there is no contradictory testimony. *See Canter v. Koehring Co.*, 283 So.2d 716, 724 (La. 1973); *See also Goings v. State Through Dep't of Pub. Safety & Corr.*, 94-1386, pp. 7-8 (La. 1/17/95), 648 So.2d 884, 887-88. Accordingly, the second assignment of error put forth by the Assessor and the City is without merit.

In their third assignment of error, the Assessor and the City contend that the Board of Tax Appeals was manifestly erroneous in its conclusion that the tenants' activities at the subject properties supported a public purpose. However, the Board of Tax Appeals never made such finding and that is not the standard established by the legislature in La. R.S. 17:3389(a) and recognized by this Court in *Bd. Of Comm's of the Port of New Orleans v. City of New Orleans*, (La. App. 4 Cir. 3/16/16), 186 So.3d 1282. In any event, the Board of Tax Appeals' findings of fact are amply supported by the record on appeal before this Court. Accordingly, we find no merit in this assignment of error.

8

In their final assignment of error, the Assessor and the City contend that the Board of Tax Appeals erred by overruling several of the Assessor's objections to what they considered inadmissible hearsay evidence on the part of UNORTF's CEO as to the activities and statements of the third-party tenants of the subject properties. The Board of Tax appeals noted that it only considered testimony from Ms. Conwell that was based on her own personal knowledge or the records of UNORTF. That is not in any way improper hearsay evidence. An executive of an organization is "competent to testify about basic information concerning the company, particularly where that information is not contradicted by any other evidence." *Schnexnaildre v. State Farm Mut. Auto Ins. Co.*, 15-0272, p. 16 (La. App. 1 Cir. 11/9/15), 184 So.3d 108, 117. Furthermore, they should be familiar enough to testify as to matters within the scope of their management responsibilities. *See Jones v. Foster*, 41,619, p. 6 (La. App. 2 Cir. 12/13/06), 945 So.2d 262, 266. Accordingly, the final assignment of error raised by the Assessor and the City is without merit.

**CONCLUSION**

For the above and foregoing reasons, the judgment of the Board of Tax Appeals is affirmed.

**AFFIRMED**

9